Approved: _____   07 MAG 1291
BRENDAN R. MCGUIRE
Assistant United States Attorney

Before:   HONORABLE KEVIN N. FOX          JAMES C. FRANCIS IV
          United States Magistrate Judge   UNITED STATES MAGISTRATE JUDGE
          Southern District of New York    SOUTHERN DISTRICT OF NEW YORK

------------------------------- x
UNITED STATES OF AMERICA        :   **SEALED**
                                :   **COMPLAINT**
     -v-                        :
                                :
COREY ROBERTSON,                :   Violations of
CLIVE NELSON, and               :   21 U.S.C. § 846, and
HAROLD CREW,                    :   18 U.S.C. § 924(c)
                                :
                                :   COUNTIES OF OFFENSE:
          Defendants.           :   BRONX and WESTCHESTER
------------------------------- x

SOUTHERN DISTRICT OF NEW YORK, ss.:

   STEPHEN LEE, being duly sworn, deposes and says that he is a Special Agent with Immigration and Customs Enforcement ("ICE"), and charges as follows:

Count One

   1.   From at least in or about November 2004 through at least in or about January 2007, in the Southern District of New York and elsewhere, COREY ROBERTSON, CLIVE NELSON, and HAROLD CREW, the defendants, and others known and unknown, unlawfully, intentionally, and knowingly did combine, conspire, confederate and agree together and with each other to violate the narcotics laws of the United States.

   2.   It was a part and an object of the conspiracy that COREY ROBERTSON, the defendant, and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance, to wit, 5 kilograms and more of mixtures and substances containing a detectable amount of cocaine, in violation of Title 21, United States Code, Sections 812, 841(a)(1), and 841(b)(1)(A).

   3.   It was a part and an object of the conspiracy that CLIVE NELSON and HAROLD CREW, the defendants, and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance, to wit, 500 grams and more of mixtures and substances containing a detectable

amount of cocaine, in violation of Title 21, United States Code, Sections 812, 841(a)(1), and 841(b)(1)(B).

(Title 21, United States Code, Section 846.)

Count Two

4. In or about January 2005, in the Southern District of New York and elsewhere, COREY ROBERTSON, the defendant, unlawfully, willfully, and knowingly, during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States, namely the offense charged in Count One of this Complaint, did use and carry a firearm, and in furtherance of such crime, did possess a firearm, to wit, a .40 caliber Taurus semi-automatic handgun, which the defendant possessed while delivering narcotics from New York to Virginia.

(Title 18, United States Code, Section 924(c)(1)(A)(i).)

The bases for my knowledge and the foregoing charges are, in part, as follows:

5. I am a Special Agent with ICE, assigned to the Narcotics Division, and I have been personally involved in the investigation of this matter. This affidavit is based in part on my conversations with other law-enforcement agents and my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

6. I have spoken to a confidential source (the "CS")[1] and the CS has informed me of the following:

> a. According to COREY ROBERTSON, the defendant, on or about January 28, 2007, at approximately 12:00 p.m., HAROLD CREW, the defendant, called ROBERTSON, and told him

---

[1] The CS has been charged with a narcotics-related crime and is cooperating with the Government pursuant to a cooperation agreement in the hope of receiving a more lenient sentence. Information provided by the CS in the past has been reliable and has been corroborated by other sources.

2

      that he had a customer who was interested in purchasing one kilogram of cocaine ("CC-1"). In response, ROBERTSON told CREW that he would call his supplier and get back to him. In the presence of the CS, ROBERTSON then called CLIVE NELSON, the defendant, and ROBERTSON and NELSON agreed to meet later that day in the Bronx, New York to discuss the cocaine transaction.

b.    On or about January 28, 2007, at approximately 2:00 p.m., NELSON, ROBERTSON and the CS met at an auto body shop in the Bronx, New York, where NELSON worked. At the auto body shop, NELSON got into ROBERTSON's car with ROBERTSON and the CS. ROBERTSON informed NELSON that CREW needed one kilogram of cocaine for one of his customers. NELSON advised that he would be able to supply that amount. With NELSON and the CS in the car, ROBERTSON then called CREW to tell him that NELSON would supply CC-1 with the kilogram of cocaine. In response, CREW said that would call CC-1 to tell him and to find out his location.

c.    Later that day, ROBERTSON called CREW in the presence of the CS, and during the call, ROBERTSON and CREW agreed to meet in the vicinity of 233rd Street and Bronx River Road in the Bronx, New York.

d.    In the early evening of January 28, 2007, ROBERTSON, NELSON, and the CS parked in the vicinity of 233rd Street and Bronx River Road in the Bronx, New York in a car being driven by the CS. Shortly thereafter, CREW pulled up behind them in a car being driven by CC-1. ROBERTSON then got out of the car, and walked to the driver's side window of the car being driven by CC-1. ROBERTSON then got back into the car being driven by the CS, and was holding a bundle of cash wrapped in rubber bands. ROBERTSON then handed the cash to NELSON, who put it in a shoe box that was inside a black shopping bag that he had with him.

  e. After ROBERTSON returned to the car being driven by the CS, NELSON called an individual believed to be his supplier, and asked him if he had just seen him cross the street. At that time, both the car being driven by the CS and the car being driven by CC-1 pulled into the parking lot of a CVS drug store (the "Drug Store") one block away. After parking, ROBERTSON and NELSON got out of the car being driven by the CS and walked into the Drug Store. NELSON was carrying the black shopping bag with the cash in it. In addition, CREW got out of the car being driven by CC-1, and walked into the Drug Store. CC-1 and the CS remained in their respective cars in the parking lot.

  f. After approximately five minutes, ROBERTSON walked out of the Drug Store carrying a black canvass bag, and got into the car with CC-1. Less than one minute later, ROBERTSON got out of CC-1's car, and was not carrying the black canvass bag. ROBERTSON then got into the car with the CS, and he and the CS drove out of the parking lot.

  7. On January 28, 2007, I drove into the parking lot of the Drug Store, and observed COREY ROBERTSON, the defendant, getting out of CC-1's car. I then followed CC-1's car and later placed CC-1 under arrest. After his arrest CC-1 provided consent to search his car. At that time, another ICE agent searched CC-1's car and found a black canvass bag on the floor behind the driver's seat. Inside the bag was a brick of approximately 1 kilogram of cocaine. ICE agents field tested the substance contained in the package and it tested positive for cocaine.

  8. I have reviewed a video recording taken by one of the Drug Store's surveillance cameras located at the entrance of the Drug Store. The recording shows CLIVE NELSON, the defendant, entering the Drug Store on January 28, 2007, carrying a black bag. The recording also shows COREY ROBERTSON, the defendant, entering the Drug Store on January 28, 2007, approximately twenty seconds after NELSON and not carrying anything. Approximately five minutes later, the recording shows ROBERTSON leaving the Drug Store carrying a black bag that appears to be different from the bag NELSON brought into the Drug Store.

  9. According to the CS, COREY ROBERTSON, the

defendant, told the CS that, during the two months prior to January 28, 2007, CLIVE NELSON, the defendant, provided ROBERTSON with one kilogram of cocaine on three different occasions for a total of three kilograms. NELSON gave the cocaine to ROBERTSON at ROBERTSON's residence in New Rochelle, New York.

10. According to the CS, from between approximately November 2004 and approximately February 2005, the CS provided COREY ROBERTSON, the defendant, with approximately 7 kilograms of cocaine. ROBERTSON then sold the cocaine, and he and the CS split the proceeds from the sales.

11. According to the CS, in the winter or spring of 2005, the CS and COREY ROBERTSON, the defendant, transported cocaine, heroin, and marijuana to Virginia on three different occasions. During one of those trips, in or about January 2005, which was made in ROBERTSON's car and began at ROBERTSON's residence in New Rochelle, New York, ROBERTSON brought a .40 caliber Taurus semi-automatic handgun with him, which he kept in the trunk of the car. When ROBERTSON and the CS arrived in Virginia, ROBERTSON took the gun out of the trunk and brought it into his cousin's residence. ROBERTSON then showed the gun to two of his cousins inside the residence, and stored it in a cabinet inside the residence. Before ROBERTSON and the CS left Virginia and returned to New York, ROBERTSON retrieved the gun from the cabinet and put it back in the trunk of his car.

WHEREFORE, deponent prays that arrest warrants be issued for COREY ROBERTSON, CLIVE NELSON, and HAROLD CREW, the defendants, and that they be imprisoned, or bailed, as the case may be.

_____
STEPHEN LEE
Special Agent
Immigration and Customs Enforcement

Sworn to before me this
7th day of August, 2007

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

JAMES C. FRANCIS IV
UNITED STATES        MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

5