Lance Croffoot-Suede
Nathan M. Carle
LINKLATERS LLP
1345 Avenue of the Americas
New York, NY 10105
212 903 9000 (Tel)
212 903 9100 (Fax)

Attorneys for Clive Nelson

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| United States of America,<br><br>               v.<br><br>Clive Nelson,<br><br>                 Defendant. | 07-CR-944 (LTS) |

## SENTENCING MEMORANDUM ON BEHALF
## OF CLIVE NELSON

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

     A.     Mr. Nelson's Offense and Guilty Pleas ............................................... 1

     ████████████████████████████████████████████████

     C.     Mr. Nelson's Personal Background ..................................................... 4

LAW AND ARGUMENT ...................................................................................................... 6

I.     THE COURT SHOULD GRANT THE GOVERNMENT'S MOTION FOR A
DOWNWARD DEPARTURE AND IMPOSE A SENTENCE OF TIME SERVED ....... 6

II.    APPLICATION OF THE FACTORS ENUMERATED IN 18 U.S.C. § 3553(a)
SUPPORTS A NON-GUIDELINES SENTENCE OF TIME SERVED AND
SUPERVISED RELEASE ............................................................................................ 10

CONCLUSION ..................................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

Page

## <u>CASES</u>

<u>Pepper v. United States,</u>
131 S.Ct. 1229 (2011)...............................................................................................12

<u>United States v. Booker,</u>
543 U.S. 220 (2005)...................................................................................................10

<u>United States v. Carr,</u>
 557 F.3d 93 (2d Cir. 2009)........................................................................................12

<u>United States v. Crosby,</u>
397 F.3d 103 (2d Cir. 2005)................................................................................10, 11

<u>United States v. Diaz,</u>
No. 11-CR-821, 2013 WL 322243 (E.D.N.Y. Jan. 28, 2013) ...................................11

<u>United States v. Heyliger,</u>
No. 08-CR-681, 2011 WL 5075662 (E.D.N.Y. Oct. 12, 2011)............................14, 15

<u>United States v. Kimbrough,</u>
552 U.S. 85 (2007).....................................................................................................12

<u>United States v. Lawal,</u>
17 F.3d 560 (2d Cir. 1994).........................................................................................7

<u>United States v. Martinez,</u>
413 F.3d 239 (2d Cir. 2005).......................................................................................11

<u>United States v. Richardson,</u>
521 F.3d 149 (2d Cir. 1994)........................................................................................7

<u>United States v. Samuels,</u>
No. S1 08-CR-08-03, 2009 WL 875320 (S.D.N.Y. April 2, 2009)............................14

<u>United States v. Torres Teyer,</u>
No. 01-CR-21, 2006 WL 3511885 (S.D.N.Y. Dec. 6, 2006) .....................................16

<u>United States v. Wilson,</u>
No. 07-CR-423, 2010 WL 2246417 (E.D.N.Y. May 24, 2010) ...................................7

<u>United States v. Zhu,</u>
No. 09-CR-465-01, 2010 WL 3282636 (E.D.N.Y. Aug. 18, 2010) ...........................15

## **STATUTES**

18 U.S.C. § 3553 ................................................................................................ *passim*

21 U.S.C. § 841 ........................................................................................................ 1

21 U.S.C. § 846 ........................................................................................................ 1

## **OTHER AUTHORITIES**

U.S.S.G. § 5B1.1(a)(2) ........................................................................................... 16

U.S.S.G. § 5C1.2 ............................................................................................. 1, 5, 13

███████████ ................................................................................... 1, 4, 6, 7

**PRELIMINARY STATEMENT**

Clive Nelson, through his undersigned counsel, Linklaters LLP, respectfully submits this Sentencing Memorandum (the "Memorandum"), and the attached exhibits, to assist the Court in determining his sentence.  This Memorandum is intended to apprise the Court of a number of factors relevant to the determination of an appropriate sentence under the provisions of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"), including U.S.S.G. §§ 5C1.2 & ███, and the provisions of 18 U.S.C. §§ 3553(a) & ███.  For all of the reasons set forth herein, the defense respectfully requests that Mr. Nelson be sentenced in accordance with the recommendation of the Presentence Investigative Report to time served and a two-year term of supervised release.  (PSR[1] at 26.)

**A.     Mr. Nelson's Offense and Guilty Pleas**

Pursuant to a cooperation agreement with the Government, Mr. Nelson has pleaded guilty for his part in conspiracies to distribute marijuana and cocaine in the Bronx in violation of 21 U.S.C. §§ 841(b)(1)(A) & 846.  ███████████  From about early 2003 to about August 2007, Mr. Nelson, on several occasions, brokered sales of marijuana.  For finding buyers, Mr. Nelson would be compensated by the sellers, who were engaged in a marijuana trafficking operation.  Mr. Nelson's role in the drug trafficking operation was as a broker or middleman between interested buyers and the sellers.  Mr. Nelson came into contact with the

---

[1]     References to the "PSR" refer to the Presentence Investigation Report dated May 1, 2013 prepared by the Probation Office for the United States District Court for the Southern District of New York in connection with Mr. Nelson's sentencing.  Mr. Nelson has not had an opportunity to object to the May 1, 2013 PSR prior to filing this sentencing memorandum.  Mr. Nelson intends to notify the Probation Office of any objections prior to his scheduled sentencing hearing.

[2]     References to the ███████ refer to Assistant United States Attorney Santosh Aravind's April 2, 2013 Letter to the Court.

1

sellers through his employment as a mechanic at a Bronx auto garage that one of the sellers owned and operated.

Additionally, on one occasion in or around January 2007, Mr. Nelson brokered the purchase and sale of cocaine, intending to receive compensation for his role in the instant transaction and any subsequent transactions.  Mr. Nelson, however, never received any compensation from the cocaine transaction, and no future transactions occurred.[3]  Mr. Nelson's involvement in this conspiracy was limited to placing the prospective buyer in contact with the prospective seller, whom he met while working in a Bronx auto garage, and accompanying the buyer and seller during the transaction and briefly holding the money they exchanged.  (PSR at 5.)  Mr. Nelson was not a leader of any drug trafficking operations.  Mr. Nelson used the proceeds that he received for his participation in a conspiracy to traffic drugs to support his wife and two children, with whom he still lives in the Bronx.

Mr. Nelson was arrested on August 9, 2007 for his involvement in the cocaine conspiracy and incarcerated for approximately 12 hours.  (PSR at 6.)  Immediately upon his arrest, ██████████████████████████████████████████████████ An indictment was filed on October 9, 2007, which charged Mr. Nelson with one count of conspiracy to distribute cocaine in the Bronx.  (Id. at 2.)  On December 1, 2008, Mr. Nelson pleaded guilty to the charged offense pursuant to a plea agreement.  (Id.)

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

Mr. Nelson pleaded guilty on December 6, 2012 to a superseding information that included the

---

[3]    While the PSR indicates that a "confidential source" told federal agents that Mr. Nelson had been involved in additional cocaine transactions (PSR at 6), the Government clarified in the ████ Letter that only one cocaine transaction involving Mr. Nelson was "consummated" (████ Letter at 3), and the PSR clarifies that the quantity in the instant offense is based on Mr. Nelson's expectation at the time of the first transaction (PSR at 24).

2

marijuana conspiracy █████████████████████████████████████, dated

November 29, 2012.  (Docket Minute Entry 103.)

██████████████████████████████████████

████████████████████████████████████████

████

███████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████

### C.    Mr. Nelson's Personal Background

Mr. Nelson was born in Manchester, Jamaica on January 25, 1976.  (PSR at 9.)
Although Mr. Nelson grew up in a difficult part of Kingston, Jamaica, he did not become
involved in the "gang wars" or other illicit activity that permeated his Jamaican neighborhood.
(Id. at 10.)   Mr. Nelson performed well in school, and graduated from a vocational high school
that provided him with technical job training.  (Id. at 10, 13.)  Following graduation, he worked
as a senior technician for a cable and satellite television company in Jamaica.  (Id. at 13.)

Mr. Nelson immigrated to the United States in 2003 in order to be with his future
wife, whom he met in Jamaica but is a United States citizen, and for a better quality of life.  (Id.
at 10.)   Mr. Nelson currently lives in a modest apartment in a working class residential
community in the Bronx, New York, with his wife, their eight-year-old daughter, and her twelve-
year-old son.  (Id. at 11.)  Mr. Nelson's wife recently obtained an associate nursing degree and

became a registered nurse.  (Ex. 1.)  As Mr. Nelson's wife wrote to the Court, Mr. Nelson has a

strong, loving family, he is a good father and step-father,  "plays the mom role", and is the

"backbone and foundation" of their home.  (Id.)  Mr. Nelson has no prior criminal history in the

United States or Jamaica, no history of drug or alcohol abuse, and "is a dedicated hard worker"

and entrepreneurial.  (Id.)  Indeed, Mr. Nelson qualifies for "safety valve" relief pursuant to

U.S.S.G. § 5C1.2 and 18 U.S.C. 3553(f), and therefore the statutory mandatory minimum

sentence for Mr. Nelson's offense does not apply here. (PSR at 7, 17; see ▮▮▮▮ Letter at n.3.)

       Mr. Nelson currently owns his own courier and delivery service business, which

he started in or about early 2005, managed the Carriage Auto Boutique, which performs auto

detailing services, in Mamaroneck, New York, from November 2012 to April 2013, and recently

started his own auto detailing business.  (PSR at 13; Exs. 1 – 3.)  Mr. Nelson owns a delivery

truck, and employs a second driver.  His business receives delivery contracts from various

national and regional logistics companies on behalf of major retailers and manufacturers.  (PSR

at 13.)  Prior to his delivery business, Mr. Nelson worked regularly in various auto garages in the

Bronx as an auto mechanic and auto body repairman.  (PSR at 14.)  It was through this

employment, in order to make additional income for his family, that Mr. Nelson became

involved in the instant marijuana and cocaine conspiracies.  Mr. Nelson's wife wrote to the Court

that he wanted "to make his family not only happy but comfortable." (Ex. 1.)  Mr. Nelson's role,

however, was limited to that of a broker or middleman, in which he received compensation from

sellers at the auto garage in exchange for connecting them with potential buyers.  Mr. Nelson

worked with others involved in the conspiracy as part of their legitimate businesses, but he was

not significantly involved in the marijuana or cocaine operations of his co-conspirators.

As the letters included herewith indicate, Mr. Nelson has shown "true remorse" for the wrongdoing he has committed, and accepts full responsibility for the harm that his actions have caused his community.  (Exs. 1 – 4.)   Over the past approximately six years, Mr. Nelson has been devoted to supporting his family.  Mr. Nelson "does the homework, attends parent teacher meetings, cooks, and attends [his Children's] games." (Ex. 1.)  As one of Mr. Nelson's close family friends has written to the court, "Clive and his wife have developed a system that works well for them and their family," and his family would be "deeply affected by his absence," especially due to "his wife['s] long working hours during the week and on the weekends."  (Ex. 2.)  Indeed, Mr. Nelson's sister has written to the Court that "Clive is very remorseful of his past and has no desire to repeat any negative behaviors which would hurt his family and erode the positive personal behavioral gains he has made."  (Ex. 4.)  Mr. Nelson "has sought to distance himself from negative situations" and "has severed ties with unproductive people."  (Ex. 3.)





As the nearly six years since Mr. Nelson's arrest have shown, he is deeply committed to remaining a law-abiding, positive member of society, and will continue on that path.

## LAW AND ARGUMENT

### I.    THE COURT SHOULD GRANT THE GOVERNMENT'S MOTION FOR A DOWNWARD DEPARTURE AND IMPOSE A SENTENCE OF TIME SERVED

The Government intends to move this Court pursuant to ████████████

████████████ for a downward departure, and to ask the Court to consider the factors set forth

in Sections ████████████ in determining Mr. Nelson's sentence.[4] ████████████████ Based

on these factors, as well as Mr. Nelson's demonstrable commitment to abiding the law over the

past almost six years, we believe it appropriate to sentence Mr. Nelson to time served and a two-

year term of supervised release, as suggested by the PSR.  (PSR at 26.)  Pursuant to Sections

████████████████ the Court has discretion to depart downward from the otherwise applicable

Guidelines range, and no statement of reasons for such a departure is required.  United States v.

Lawal, 17 F.3d 560, 563 -564 (2d Cir. 1994); see also United States v. Richardson, 521 F.3d 149,

158 (2d Cir. 1994)("A motion under ██████ authorizes the sentencing court to depart below the

applicable advisory guideline range in determining the advisory guideline sentence, and a █

████████ motion permits the court to sentence below a statutory minimum.")  Time served and

supervised release is appropriate where the Government has made ██████████████████

████████  See United States v. Wilson, No. 07-CR-423, 2010 WL 2246417 (E.D.N.Y. May 24,

2010)(time served and supervised release imposed for violation of 21 U.S.C. § 846, 841(a)(1)

and (b)(1)(A), ████████████████████████████████████████████

████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

---

[4] ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████

████████████████████████████████████

████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

█████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

████████ Mr. Nelson agreed to plead guilty to a superseding information containing a conspiracy count that stated a conspiracy to distribute 1000 kilograms and more of marijuana. The superseding information also contained an increased quantity of cocaine from the original conspiracy count, based on Mr. Nelson's estimation as to the quantity he believed would be distributed, although it remains the case that only a single cocaine deal, involving one kilogram, actually occurred as part of the conspiracy.

████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████

█████████████████████████████████

████████████████████████████ we respectfully submit that the Court should grant the Government's

motion and, as discussed in more detail, _infra_, sentence Mr. Nelson to time served and a two-year

term of supervised release, either pursuant to a downward departure as requested by the

Government or a non-guidelines sentence.

## II.    APPLICATION OF THE FACTORS ENUMERATED IN 18 U.S.C. § 3553(a) SUPPORTS A NON-GUIDELINES SENTENCE OF TIME SERVED AND SUPERVISED RELEASE

████████████████████████████████

████████████ the Section 3553(a) factors also demonstrate that a sentence less than the ordinarily

applicable Guidelines range is appropriate.  Indeed, a sentence of time served and supervised

release is warranted for Mr. Nelson.  As a result of the Supreme Court's decision in United

States v. Booker, not only are the Guidelines advisory, but the factors listed in Section 3553(a)

carry increased significance.  See United States v. Booker, 543 U.S. 220 (2005); see also United

States v. Crosby, 397 F.3d 103, 111 (2d Cir. 2005) ("[T]he duty imposed by section 3553(a) to

'consider' numerous factors acquires renewed significance [post-Booker].")

Courts must now consider all of the factors listed in Section 3553(a) in

determining a defendant's sentence, and may not merely rely on the sentencing range produced

by application of the Guidelines. Crosby, 397 F.3d at 110-11. Under Section 3553(a), courts

should consider a variety of factors, including the characteristics of the defendant, whether the

10

sentence will afford adequate deterrence to criminal conduct, and whether the sentence will

protect the public from further crimes of the defendant.[5]  After consideration of all these factors,

a court has significant discretion to impose a non-Guidelines sentence, and is entitled to find "all

facts appropriate for determining either a Guidelines sentence or a non-Guidelines sentence."

Crosby, 397 F.3d at 113; see also United States v. Martinez, 413 F.3d 239, 243 (2d Cir.

2005)("[J]udges imposing sentence in accordance with Booker may exercise greater discretion

than they could have exercised under the pre-Booker regime").

   Courts have commented that even when mandatory minimum sentences do not

apply because, as they are here, the requirements for "safety value" relief are met, the sentencing

ranges suggested by the Guidelines for defendants like Mr. Nelson "are deeply and structurally

flawed" and "excessively severe."  See, e.g., United States v. Diaz, No. 11-CR-00821, 2013 WL

322243, 1 (E.D.N.Y. Jan. 28, 2013)(noting that in sentencing for a "low-level participant in a

drug distribution offense" with no prior offenses who was a "middleman" in a drug transaction

and  "paid for his services", the court would "place almost no weight on" the Guidelines range.).

"Indeed, the the Guidelines ranges for drug trafficking offenses are not based on empirical data,

---

[5] Section 3553(a) provides that the court, in determining the particular sentence to be imposed, shall consider
(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed –
  (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment
  for the offense;
  (B) to afford adequate deterrence to criminal conduct;
  (C) to protect the public from further crimes of the defendant; and
  (D) to provide the defendant with needed educational or vocational training, medical care, or other
  correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and sentencing range established for –
  (A) the applicable category of offense committed by the applicable category of defendant as set forth in the
  guidelines…
(5) any pertinent policy statement…
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found
guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

[Federal Sentencing] Commission expertise, or the actual culpability of defendants. . . . Instead, they are driven by drug type and quantity, which are poor proxies for culpability."  Id.

Sentencing judges may impose non-Guidelines sentences based on their disagreement with this flawed policy reflected by the Guidelines.  See Pepper v. United States, ___U.S.___, ___, 131 S.Ct. 1229, 1247, (2011) ("[O]ur post- Booker decisions make clear that a district court may in appropriate cases impose a non-Guidelines sentence based on a disagreement with the [Federal Sentencing] Commission's views."); see also United States v. Carr, 557 F.3d 93, 106 (2d Cir. 2009)("[United States. v.] Kimbrough[, 552 U.S. 85 (2007)] stands for the proposition that the sentencing court has discretion to deviate from the Guidelines-recommended range based on the court's disagreement with the policy judgments evinced in a particular guideline.").

Judges appear to have regularly exercised their authority to disagree with the flawed policy of the Guidelines in drug cases by issuing non-Guidelines sentences, even in instances where the Government has not moved for a downward departure.  From December 11, 2007 to September 30, 2010, the average reduction from the bottom end of the applicable sentencing range in non-Government sponsored below-range sentences was 39 months for crack offenses (32.7% reduction) and 27 months for cocaine and heroin offenses (respectively, 33.7% and 37.2% reductions).  Judge Patti B. Saris, Chair, U.S. Sentencing Comm'n, Prepared Testimony Before the Subcommittee on Crime, Terrorism, and Homeland Security, Committee on the Judiciary, United States House of Representatives (Oct. 12, 2011), at 33, 36, 43, available at http://www.ussc.gov/Legislative_and_Public_Affairs/Congressional_Testimony_and_Reports/ Testimony/20111012_Saris_Testimony.pdf.

Here, the PSR indicates that the Guidelines range for Mr. Nelson, from which the Government has requested the Court depart and with which the PSR agrees, is 70 to 87 months. The PSR calculates Mr. Nelson's Guidelines range based on an underlying offense level of 32, with a two-point reduction for meeting the safety valve provisions of § 5C1.2, and a 3-point reduction for acceptance of responsibility.[6]  While the offenses to which Mr. Nelson pleaded guilty carry a mandatory minimum sentence of 10 years imprisonment, the statutory minimum sentence does not apply to him pursuant to the "safety valve" provision of the Sentencing Guidelines, U.S.S.G. § 5C1.2.  (PSR at 7, 25; see ███ Letter at n.3).  The quantities of the drugs stated in the count to which Mr. Nelson pleaded guilty reflect the total amounts involved in the conspiracies, based on Mr. Nelson's personal understanding at the time, irrespective of Mr. Nelson's actual conduct or the amount of drugs actually distributed.  Indeed, while Mr. Nelson understood that the buyer "was going to receive at least five kilograms" of cocaine from the seller, "only one kilogram [cocaine] deal was consummated."  (███ Letter at 3, 6.)  Moreover, Mr. Nelson's involvement in the marijuana conspiracy was as a broker between sellers (who sold and trafficked marijuana independently of Mr. Nelson) and buyers, for which Mr. Nelson would receive "a finder's fee."  (5K1.1 Letter at 6.)  As the quantities involved in the conspiracies to which Mr. Nelson pleaded guilty do not reflect the seriousness of Mr. Nelson's role, the Guidelines range in which these quantities result should not be regarded as the baseline for determining Mr. Nelson's sentence.

For Mr. Nelson, it is appropriate, given the totality of the circumstances, to depart downward significantly from the suggested Guidelines range or otherwise impose a non-

---

[6]      We note that Mr. Nelson's initial plea agreement, not under a cooperation agreement or subject to a 5K1.1 motion, stipulated a quantity of 2.5 to 5 kilograms of cocaine involved in the conspiracy, from which the draft PSR, dated April 14, 2009,  calculated a Guidelines range of 46 to 57 months imprisonment.

Guidelines sentence of time served and a two-year term of supervised release.  Since Mr.

Nelson's arrest almost six years ago he has been released on bail, during which time he has not

violated the terms of his bail, has remained gainfully employed and supported his family, and has

cooperated extensively with the Government.  Mr. Nelson is deeply remorseful for his prior

conduct, and has demonstrated it "by changing his life around completely."  (Ex. 1.)  Mr. Nelson

"takes the roles of father and husband seriously" and he "has also become an upstanding member

of the community and makes a meaningful contribution through the business he operates."  (Ex.

4.)

       Indeed, where the facts indicate that a defendant was not a leader of a criminal

enterprise, has shown remorse, poses no risk to society, is gainfully employed, and has important

family obligations, courts have departed downward from the Guidelines range and imposed

sentences of time served.  See, e.g., United States v. Heyliger, No. 08-CR-681, 2011 WL

5075662, 2 (E.D.N.Y. Oct. 12, 2011)(Weinstein, J.)(Where defendant violated [21 U.S.C. § 846,

841(a)(1) and (b)(1)(A)], ████████████████████████████, the court

imposed time served and five years of supervised release in a non-Guidelines sentence under

Section 3553(a) and a downward departure from the Sentencing Guidelines after "[r]espectful

consideration was given to the sentencing guidelines, the Sentencing Commission's policy

statements and all other factors listed under 18 U.S.C. § 3553(a) . . . pursuant to the

Government's 5K1.1 letter.");  United States v. Samuels, No. S1 08-CR-08-03, 2009 WL 875320

(S.D.N.Y. April 2, 2009)(Where defendant violated 21 U.S.C. § 846, 841(a)(1) and (b)(1)(A),

did not cooperate or substantially assist the Government, and the recommended Guidelines range

for imprisonment was 70 to 87 months, the court imposed a sentence of time served following 15

months of incarceration and a three-year term of supervised release in a non-Guidelines sentence
under Section 3553(a)).

   Additionally, we respectfully submit that a sentence of time served and a two-year
term of supervised release is sufficient but not greater than necessary to comply with the factors
enumerated in 18 U.S.C. § 3553(a)(2).  United States v. Heyliger, 2011 WL 5075662, at 2.  The
factors this Court must consider under Section 3553(a)(2) include the need for the sentence
imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide
just punishment for the offense" as well as "to afford adequate deterrence to criminal conduct"
and "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(A)-(C).
The seriousness of the offense, respect for the law, and just punishment are all satisfied by a
sentence of time served and a two-year term of supervised release, given Mr. Nelson's limited
role in the conspiracies, █████████████████████████████████, and his
upstanding behavior over the nearly six years since this case began.  Heyliger, at 2 (finding that
time served and a period of supervised release "will send a clear message that any involvement
in drug sales will result in prison time," achieve specific deterrence, and noting that it "is
unlikely that [defendant] will engage in further criminal activity in light of [his] need to support
[his] children", that the defendant's " cooperation with the Government in this case demonstrates
[his] acceptance of responsibility," defendant's behavior over the three years since being arrested
"has demonstrated [his] desire and capacity to lead a law-abiding life.")  See also United States
v. Zhu, No. 09-CR-465-01, 2010 WL 3282636, at *2 (E.D.N.Y. Aug. 18, 2010)(finding that even
where probation was excluded under the defendant's Guidelines range, a sentence that did not
include any jail time "reflects the seriousness of the offense and will promote respect for the
law" where defendant had cooperated with the Government and a prison term would do harm to

her family.)  Indeed, ███████████████████████████████████████, and the multiple

letters to the Court on his behalf, strongly demonstrate his respect for the law and that the public

is adequately protected from the possibility that Mr. Nelson will commit crimes in the future.

See United States v. Torres Teyer, No. 01-CR-21, 2006 WL 3511885, at *9 (S.D.N.Y. Dec. 6,

2006)(stating that ███████████████████████ "may indicate that the defendant's

character is less incorrigible than it may have otherwise appeared, and the need for protection of

the public – a critical goal of sentencing under § 3553(a)(2)(C) – is to some extent reduced"),

aff'd in part by 412 F.App'x 388 (2d Cir. 2011).[7]

---

[7]    Should the Court find that Mr. Nelson must serve part of his sentence in some form of confinement, we respectfully submit that it would be appropriate and reasonable to make a condition of his sentence that he be subjected to either home or community confinement. U.S.S.G. § 5B1.1(a)(2).  Home confinement serves the interests of society, as it costs taxpayers significantly less than it would to incarcerate Mr. Nelson. See Fed. Corr. and Supervision Div., Admin. Office of the U.S. Courts, U.S. Prob. & Pretrial Services, Court & Cmty.: Home Confinement (Sep. 2000), http://www.nhp.uscourts.gov/pdf/cchome.pdf (Ex. 5) (noting that home confinement costs taxpayers one-third as much as incarceration).  Additionally, Mr. Nelson could continue to operate his delivery business, detailing business, or maintain other forms of employment while subject to community or home confinement, which is preferable to a lengthy jail sentence in ensuring that Mr. Nelson continues to follow a law-abiding path.

**CONCLUSION**

For all of the reasons set forth above, we respectfully request that the Court grant the Government's motion for a downward departure under ███████ and sentence Mr. Nelson to time served and a two-year term of supervised release, either pursuant to a downward departure as requested by the Government and suggested by the PSR, or a non-Guidelines sentence.

Dated:       New York, New York
             May 6, 2013

                                        Respectfully submitted,

                                        Linklaters LLP

                                        By:   /s/ Lance Croffoot-Suede
                                              Lance Croffoot-Suede
                                              Nathan M. Carle
                                              1345 Avenue of the Americas, 19th Floor
                                              New York, NY  10105
                                              (212) 903-9000
                                              (212) 203-9100 (fax)

                                              Attorneys for Clive Nelson